IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LORETTA ANN HORN                                        PLAINTIFF

V.                         No. 4:24-CV-00697-KGB-PSH

LELAND DUDEK,[1] Acting Commissioner,
Social Security Administration                          DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation, and those objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

I.    **Procedural History**

On January 13, 2021, Loretta Horn applied for Title XVI disability benefits, alleging disability beginning December 26, 2018. (Tr. at 11). Her claim was denied

---

[1]Leland Dudek currently serves as the Acting Commissioner of the Social Security Administration. He has been substituted as the appellee pursuant to Fed. R. App. P. 43(c)(2).

both initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. During the hearing, Horn amended her alleged onset date to January 13, 2021. *Id*.

On October 25, 2023, the ALJ issued a written decision finding that Horn was not disabled. (Tr. at 28). At step two of the sequential five-step analysis,[2] the ALJ found Horn had the following severe impairments: posttraumatic stress disorder; generalized anxiety disorder; personality disorder; depressive disorder; degenerative disc disease of the cervical spine, status post C5-C7 ACDF surgery; non-ruptured cerebral aneurysm; and migraine headaches. (Tr. at 13). After finding that none of these impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Horn would be able to perform light work with certain limitations. (Tr. at 17–18). Physical limitations included (1) no climbing ladders, ropes, or scaffolds; (2) occasionally crawling, reaching overhead bilaterally, and pushing or pulling with her upper extremities bilaterally; and (3) avoiding concentrated exposure to excessive vibration, unprotected heights, hazardous

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4).

machinery, and loud noises (defined as jackhammering or rock concert type noise).
Horn could use judgment to make simple work-related decisions; maintain
concentration, persistence, and pace for simple tasks; understand, carry out, and
remember simple work instructions and procedures; adapt to changes in the work
setting that were simple, predictable, and easily explained; and have occasional
interaction with co-workers, supervisors, and the public. After finding that Horn had
no past relevant work, the ALJ found that a significant number of jobs existed in the
national economy for someone Horn's age with her education, work experience, and
residual functional capacity ("RFC"). (Tr. at 26).

In response to the ALJ's ruling, Horn requested review of the decision, and
she submitted additional medical evidence dated October 25, 2023, and December
2023.[3] (Tr. at 41, 91). The Appeals Council denied Horn's request for review,
finding that the records from October 25 did not show a reasonable probability of
changing the outcome of the ALJ's decision and that the December medical records
did not relate to the period at issue. (Tr. at 2). Because the Appeals Council denied
review, the ALJ's decision stands as the final decision of the Commissioner.

---

[3]Pursuant to 20 C.F.R. § 416.1470(a)(5), the Appeals Council will review a case
when it receives additional evidence that is new, material, and relates to the period on or
before the date of the hearing decision, and there is a reasonable probability that the
additional evidence would change the outcome of the decision. To be considered "new,"
evidence cannot be merely cumulative of other evidence in the record. *Bergmann v. Apfel*,
207 F.3d 1065, 1069 (8th Cir. 2000). Evidence is material if it is "relevant to a claimant's
condition for the time period for which benefits were denied." *Id*.

Horn now seeks judicial review, and for the reasons stated below, the Court should reverse and remand.

## II.    <u>Standard of Review</u>

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

It is not the task of the Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the Commissioner because there is contradictory evidence in the record. The test is whether there is substantial evidence in the record as a whole to support the decision of the Commissioner. *Miller*, 784 F.3d at 477.

## III.    <u>Discussion</u>

On appeal, Horn argues that the RFC is not supported by substantial evidence in the record. She claims that both the physical and mental limitations outlined by the ALJ are insufficient. She also contends that the supplemental medical evidence

she provided to the Appeals Council supports her claim of daily, debilitating headaches. Because there is merit to Horn's latter argument, this Court recommends remand.

At the ALJ hearing on August 2, 2023, Horn, who was homeless, testified that she had a "pretty good size" aneurysm that was "culled out," and that she had a follow-up appointment scheduled for September regarding another aneurysm. (Tr. at 108). She described chronic daily headaches and said she often woke up with a headache. (Tr. at 108–09). She treated her headaches with over-the-counter medications and testified that she was "eating ibuprofens and Tylenol . . . like crazy." (Tr. at 109). Horn would take eight to ten 500mg Tylenol up to three times a day. (Tr. at 118). She said that thinking hard or concentrating would trigger a headache. (Tr. at 19). To alleviate the headache, she would use a cold towel, lie down, and shut her eyes for thirty to sixty minutes. (Tr. at 110). She noted that the headaches made her vision blurry. (Tr. at 115–16). Horn recounted that she had a stroke in 2015 and "that's whenever I found out that I had that brain aneurysm." (Tr. at 112).

In addition to Horn's testimony, the ALJ reviewed numerous medical reports and examination records. On November 3, 2017, Horn saw Christina Reid, P.A., at Baptist Health Family Clinic Cabot. (Tr. at 762). Horn reported that she "had an aneurysm" that was overdue for reevaluation. *Id*. Notes indicated that Horn had been referred to neurology the previous February, that she did not receive her paperwork,

and that she had missed her appointment. *Id*. Additional notes stated that Horn had

stopped taking Topamax because "she still had a headache all day every day without

improvement" and that she was smoking cigarettes and drinking alcohol. (Tr. at 19,

762). On December 10, 2018, testing revealed Horn had a right-side MCA

trifurcation aneurysm. (Tr. at 774). Horn had a successful coil embolization

procedure to treat the aneurysm on March 12, 2019. (Tr. at 677–78).

On May 28, 2019, an MRI revealed degenerative disc changes at C5-6, a

herniation at C6-7, and bulging discs at C5-6. (Tr. at 694–95). She had mild to

moderate canal stenosis at C5-6 and C6-7 and moderate right foraminal stenosis at

C5-6. (Tr. at 695). Horn continued to complain of neck pain, tingling and numbness,

and daily headaches in June 2019. (Tr. at 699). She had spinal fusion surgery on July

10, 2019. (Tr. at 724). At a follow-up appointment on July 26, 2019, Horn reported

she had not had much improvement in her neck pain or radicular symptoms. (Tr. at

733). Her pain medications were refilled, and she was referred to physical therapy.

*Id*. Horn attended a physical therapy evaluation on August 12, 2019, but then never

returned. (Tr. at 418). On September 12, 2019, Horn had another surgical follow-up

where she reported continued neck pain, which the doctor noted was likely

"muscular in nature." (Tr. at 739). She reported that she did not go back to physical

therapy because she did not like the TENS unit. *Id*. Treatment notes indicated she

was "clinically doing well," had bilateral trapezius muscle spasm, and had a normal examination. (Tr. at 740–41).

On September 25, 2019, a follow-up cerebral angiogram revealed a stable Raymond II occlusion of the previously treated right MCA aneurysm. (Tr. at 581). On March 10, 2020, Horn sought treatment in the emergency room for headache, jaw pain, neck pain, and scrambled speech and thinking after being hit in the head multiple times during a domestic dispute with her boyfriend. (Tr. at 452). A CT scan showed the treated right-side aneurysm and no acute intracranial abnormality. (Tr. at 454). Horn had another neurological examination on September 10, 2020. (Tr. at 583). Although the neurologist ordered a cerebral angiogram, the ALJ noted there was no evidence Horn followed through with the recommendation. (Tr. at 21). On February 9, 2021, Horn saw Christina Reid for headache, neck pain, dysuria, and hematuria. (Tr. at 526). Horn was prescribed Zanaflex and prednisone, and her trazadone was increased. (Tr. at 529). Reid recommended conservative treatment, including ice, heat, and gentle stretching. *Id*. Thereafter, Horn sought emergency treatment on August 24, 2021, after being "assault[ed] with fists." (Tr. at 558). She was diagnosed with "generalized headache" and an examination revealed a contusion on her head. *Id*. She left without receiving any treatment. *Id*.

Horn revisited the emergency room on January 12, 2022, with "vague complaints" of "weird neck pains, inability to lift her head up, and numbness on the

left side of her head." (Tr. at 746). She reported a dull, worsening headache throughout the week. (Tr. at 749). Other than cervical tenderness, her examination was normal, and a CT showed no acute intracranial finding. (Tr. at 752). She was diagnosed with neck pain and acute non-intractable headache. (Tr. at 755). She received Decadron and Toradol injections and a prescription for Norco and prednisone. *Id*.

The ALJ noted that Horn was incarcerated from October 2022 to April 2023. (Tr. at 22). Her medical records during that period show she was restricted from prolonged crawling, stooping, running, jumping, walking, or standing more than four hours per day; no strenuous physical activity more than four hours per day; and no lifting more than forty pounds. (Tr. at 799). While incarcerated, Horn complained of headaches in March and April 2023. (Tr. at 926, 932).

In denying Horn's claim of disability, the ALJ found that Horn's impairments could reasonably be expected to cause her alleged symptoms, but her claims regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with medical evidence and other evidence in the record. The ALJ cited to normal examinations throughout the relevant period, specifically those showing that Horn displayed good physical functioning and no neurological abnormalities. (Tr. at 19–23). The ALJ pointed to instances where Horn did not follow up with treatment recommendations, including physical therapy and reevaluation of her aneurysm, and

to the fact that she took over-the-counter medication to treat her headaches. Additionally, the ALJ noted an overall lack of objective medical data to support Horn's claim of disabling headaches, including consistent CT scans indicating that her aneurysm was treated with no acute intracranial abnormalities. The ALJ found the state agency medical consultant's evaluation—that Horn could perform light work with some physical limitations—persuasive. (Tr. at 23). However, because Horn's "record shows persistent complaints of neck pain and headaches since the application date," the ALJ determined that additional limitations were required. *Id*.

On October 25, 2023, the same day the ALJ issued his written decision, Horn had another brain MRI that revealed "a new 5 mm basilar artery aneurysm from the remote 2018 exam." (Tr. at 97). In subsequent records from Baptist Health Neurosurgery on December 7, 2023, Horn reported experiencing "almost daily headaches." (Tr. at 74). The records indicate that the October 2023 aneurysm was "not present on previous scans." *Id*. As of December 2023, it was recommended that Horn be scheduled for endovascular embolization "in the next few weeks." (Tr. at 84). Horn submitted the October and December 2023 medical records to the Appeals Council.

In cases involving the submission of supplemental evidence after the ALJ's decision, the record includes the evidence submitted after the hearing. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999) (citing *Riley v. Shalala*, 18 F.3d 619, 622

(8th Cir. 1994)); *see also Browning v. Sullivan*, 958 F.2d 817, 823 n. 4 (8th Cir. 1992) (noting that additional evidence submitted to the Appeals Council following an ALJ's decision becomes part of the administrative record for judicial review). "When the Appeals Council has considered new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence." *Kitts v. Apfel*, 204 F.3d 785, 786 (8th Cir. 2000). Evaluating the new evidence requires the court to determine how the ALJ would have weighed the newly submitted evidence if it had been presented at the original hearing. *Jenkins*, 196. F.3d at 924.

In reviewing the whole record—including the new evidence—this Court is convinced that remand is appropriate. In his decision, the ALJ acknowledged that Horn had consistently reported headaches since her application. Moreover, the ALJ heavily relied on normal examinations and consistent CT scans indicating that Horn's aneurysm was treated and that she had no acute intracranial abnormalities to find that the intensity and severity of her pain was not consistent with objective medical evidence. The supplemental medical evidence—showing that Horn had a new, previously undocumented aneurysm that needed treatment—could establish a basis for Horn's continued complaints of severe daily headaches and additional work

limitations.[4] Moreover, this new aneurysm was found on the day of the ALJ's decision, within the relevant period. Because this new medical evidence very likely would have affected the ALJ's assessment of the severity and limiting effects of Horn's pain, remand is appropriate.

## IV.    <u>Conclusion</u>:

For the reasons stated above, the undersigned recommends reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 13th day of March, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4]The Commissioner argues that the October 2023 aneurysm was not new and that it was discovered in March 2020. (Doc. 9, at 14). Having reviewed the medical records from March 2020, which include imaging showing a "[r]ight MCA area aneurysm coils present with extensive artifact," this Court rejects the Commissioner's proposition. (Tr. at 454). There is no mention of a "new" aneurysm in March 2020, the ALJ does not characterize the March 2020 records as finding a new aneurysm, and the October and December 2023 records clearly identify a "new" and "not present on previous scans" aneurysm.